# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 4, 2016

## IN RE G.L.

### Appeal from the Juvenile Court for Greene County
### No. J26869    Kenneth N. Bailey, Jr., Judge

---

### No. E2016-00597-COA-R3-PT-FILED-DECEMBER 28, 2016

---

This is a termination of parental rights case. The Department of Children's Services filed a petition to terminate the parental rights of C.L. (Mother)[1] to her child, G.L. (the Child). The trial court found clear and convincing evidence of grounds supporting termination due to severe child abuse and abandonment by an incarcerated parent. The court also found, by the same quantum of evidence, that termination is in the best interest of the Child. Mother appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Sandy Phillips, Johnson City, Tennessee, for appellant, C.L.

Herbert H. Slatery III, Attorney General and Reporter, and Brian A. Pierce, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

### OPINION

---

[1] In the same petition, DCS also sought to terminate the parental rights of R.L. (Father). The trial court terminated those rights in an order entered March 4, 2016. Father's case is not before us on this appeal.

## I.

The Child was born on October 23, 2003. In July 2011, Mother took photographs of the Child's genitals and of the Child while she was sleeping and only wearing a tee-shirt and underwear. Mother sent these photographs to her former boyfriend, M.F., via text messages upon his request. At the time, Mother knew that M.F. was a registered sex offender. During the course of their relationship, M.F. frequently discussed with Mother his sexual interest in the Child.

After admitting to DCS in April 2014 that she had taken the photographs and sent them to M.F., law enforcement became involved. Mother signed a statement describing the photographs, admitting to sending them to M.F., and describing conversations she had with M.F. about his sexual interests in the Child. On April 25, 2014, the trial court entered an emergency protective custody order placing the Child in the temporary custody of DCS.

On July 16, 2014, a federal grand jury indicted Mother on charges of producing, distributing, and possessing child pornography. Mother later signed an agreement on September 11, 2015, pleading guilty to knowingly distributing child pornography. She remains incarcerated on that charge.

DCS filed its petition to terminate Mother's parental rights on April 22, 2015. It sought termination on two grounds – severe child abuse, pursuant to Tenn. Code Ann. § 36-1-113(g)(4) and abandonment by an incarcerated parent, pursuant to Tenn. Code Ann. § 36-1-113(g)(1).

The case was heard before the trial court on January 26, 2016. Because Mother was in federal custody at the time of the hearing, she appeared via telephone. The trial court entered an order finding clear and convincing evidence to terminate Mother's parental rights on the grounds of severe child abuse and abandonment by an incarcerated parent. By the same standard of evidence, the trial court found that termination is in the Child's best interest. Mother appeals.

## II.

Mother filed a notice of appeal on March 11, 2016, raising the following issue, as taken verbatim from her brief:

> Were [Mother's] due process rights violated by not being able
> to meaningfully participate in the trial telephonically because
> the telephone was inadequate for her to hear?

## III.

On appeal, Mother argues, as taken verbatim from her brief, that

> [d]ue process requires that the court provide an incarcerated parent with meaningful access to the court. By not providing sufficient telephonic access, the court deprived [her] of meaningful access.

After reviewing the trial transcripts, as well as the pleadings and exhibits in the record, we have found no indication that Mother raised due process concerns at the trial. Mother never raised the issue that she was deprived of meaningful access to the court during trial. Mother has waived her right to raise this issue on appeal by not raising it with the trial court. *In re Johnny E.K.,* No. E2009-01634-COA-R3-PT, 2010 WL 550911, at \*5 (Tenn. Ct. App., filed Feb. 16, 2010); *In re Montana R.T.,* No. E2011-00755-COA-R3-PT, 2012 WL 2499498, at \*3 (Tenn. Ct. App., filed June 29, 2012).

## IV.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the

3

trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. *In re Carrington*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], *regardless of whether the parent challenges these findings on appeal*.") (Emphasis added.)

The Supreme Court has recently delineated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

4

## V.

## A.

The trial court held that clear and convincing evidence exists to terminate Mother's parental rights based on severe child abuse. Tenn. Code Ann. § 39-1-113(g)(4) permits the termination of parental rights if the parent has committed severe child abuse as defined by Tenn. Code Ann. § 37-1-102(b)(22):

> (C) The commission of any acts towards the child prohibited by § . . . 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child[.]

The aforesaid Tenn. Code Ann. § 39-17-1005 prohibits and defines especially aggravated sexual exploitation:

> (a) It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance of, or in the production of, acts or material that includes the minor engaging in:
> (1) Sexual activity; or
> (2) Simulated sexual activity that is patently offensive.

When analyzing this ground, the trial court found and held, as follows:

> In 2011, [Mother] took photographs of the minor child's vagina and sent them via text message to her then boyfriend, [M.F.], a registered sex offender. . . . A few days after receiving the initial photographs, . . . [Mother] took a photograph of the child wearing a night shirt and underwear. She then sent the photograph via text message to [M.F.'s] cell phone. On April 1, 2014, [Mother] informed DCS that she had taken the aforementioned photographs and the Greeneville Police Department subsequently investigated the allegations. After law enforcement . . . obtained her signed statement admitting to taking the photographs and sending them to [M.F.], [law enforcement] . . . was able to locate pictures on [Mother's] computer that depicted the minor child wearing a bra, images of the minor child sitting on [M.F.'s] lap while neither appear to be wearing a shirt, a picture of the child in bed naked, and photographs of the child's vagina. [Mother] was aware that [M.F.] was a sex offender . . . [and]

5

has also admitted that she was aware of the sexually explicit nature and character of the photos at the time she sent them to [M.F.]. In September 2015, [Mother] pled guilty to one count of knowingly distributing child pornography[.]

Based on the above factual findings, the trial court held that Mother's actions constitute especially aggravated sexual exploitation of a minor and clear and convincing evidence of the ground of severe child abuse. Our review of the record demonstrates that the evidence does not preponderate against the trial court's factual findings. In the present action, Mother took photographs of the Child's genitals and sent them to a known sex offender. She sent them to someone who had discussed with Mother his sexual interest in the Child. Mother admitted to taking these photographs, and she admitted that the photographs were sexually explicit in nature. She pleaded guilty to federal charges for knowingly distributing child pornography. Her actions constitute especially aggravated sexual exploitation of a minor and severe child abuse. We hold, as a matter of law, that there was clear and convincing evidence that Mother committed severe child abuse.

**B.**

Tenn. Code Ann. § 36-1-113(g)(1) authorizes the termination of parental rights when abandonment occurs as defined by Tenn. Code Ann. § 36-1-102(1)(A). Abandonment by an incarcerated parent occurs when:

> (iv) A parent . . . is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

As it relates to this ground, the trial court found:

> [Mother] has been incarcerated all of the four (4) months immediately preceding the filing [of DCS's petition] on April 22, 2015. . . . The fact that [M.F.] was a sex offender should have been [Mother's] clue that she needed to not be around him and that she should absolutely not expose her child to him. . . . Mother and [M.F.] engaged in conversations in which [he] expressed his sexual interest in the child. . . . [Mother] testified that she would let the things [M.F.] said to her regarding his sexual interest in the child go in one ear and out the other.

6

Based on these factual findings, the trial court held that there was clear and convincing evidence for the ground of abandonment by wanton disregard against Mother.

Our review of the record demonstrates that the evidence does not preponderate against the trial court's factual findings. In the present action, Mother was indicted on July 16, 2014 for charges of producing, distributing, and possessing child pornography. DCS filed its petition to terminate Mother's rights on April 22, 2015. At that time, Mother was incarcerated on the charges against her in federal court. Because Mother was incarcerated when the termination proceedings were initiated, the definitions for abandonment under Tenn. Code Ann. § 36-1-102(1)(A)(iv) apply.

It is clear that Mother engaged in conduct that exhibits a wanton disregard for the welfare of the Child prior to incarceration. Mother's actions placed the child in danger. By taking explicit photographs of the Child and sending them to a known sex offender, Mother placed the child in danger. Despite M.F. expressing his sexual interest in the Child, Mother exposed the Child to him and placed the Child in danger. This conduct exhibits a wanton disregard for the Child's welfare. We hold, as a matter of law, that there is clear and convincing evidence of Mother's wanton disregard for the Child's welfare prior to incarceration.

## VI.

After finding that there are statutory grounds warranting termination of Mother's parental rights, we now focus on whether termination is in the Child's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i):

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular

7

visitation or other contact with the child;

(4)   Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)   The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)   Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)   Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)   Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)   Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive[,] and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

In the present action, the trial court found, by clear and convincing evidence, that termination of Mother's parental rights was in the best interest of the Child. The court found:

It is in the child's best interest for termination to be granted as to [Mother] because she has not made changes in her conduct or circumstances that would make it safe for the child to return home or to allow her to safely and adequately parent the child in the future. . . . [Mother] will be serving a sentence in federal custody and as such, reunification would not be appropriate and would not be accomplished in a timely manner. . . . [Mother's] home is not appropriate because of her previous behavior and what she has exposed the child to. . . . [C]hanging caregivers at this stage of the child's life would have a detrimental effect on her. . . . [Mother] has severely abused the child[,] . . . [and] there is crime in her home. . . . [Mother] has shown little or no interest in the welfare of the child[, and] the child has established a strong bond with her foster parents, who wish to adopt her.

The evidence does not preponderate against the trial court's factual findings as it relates to the Child's best interest.

We are persuaded that termination of Mother's parental rights is in the Child's best interest. Mother exposed the Child to a known sex offender over a period of years, and she made no adjustment upon learning of M.F.'s status so as to make her home safe. The Child was removed from Mother's custody in April 2014, and since then, the Child had developed a relationship with her foster parents since being placed with them in October 2014. Removing the Child from her foster parents' care would have a negative effect on the Child's emotional condition. Mother's home is not healthy and safe for the Child because Mother is in federal custody on criminal charges due to criminal activity in the home. Mother will not be able to provide a stable home for the Child.

With all of these facts in mind, we conclude, as a matter of law, that there is clear and convincing evidence that termination of Mother's parental rights is in the Child's best interest.

## VII.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant, C.L. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

9